## Shearer et al. v. Huff et al.

(Decided May 3, 1932.)

E. BERTRAM and J. M. KENNEDY for appellants.

DUNCAN & BELL and J. G. SMITH for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On April 11, 1919, M. D. Shearer and B. L. Ramsey sold and by deed of general warranty conveyed to J. G.

Huff, W. E. Smith, C. P. Huff, J. E. Means, and E. R. Wilburne jointly, three tracts of land situated in the counties of Wayne and Clinton. The consideration for the conveyance was $14,900, all of which was paid, except the sum of $1,600 which by stipulation in the deed was "to be paid when certain lines between the lands hereinafter described and a tract of land known as the Champ Ferguson tract are settled and determined."

On the 16th day of August, 1919, and before the lines between the lands conveyed by the foregoing deed and the Ferguson tract had been determined or settled, the grantees sold and conveyed the three tracts of land to the Wood Mosaic Company of New York, a corporation, and on the 2d of February, 1922, that company conveyed the lands to the Wood Mosaic Company of Kentucky, a Kentucky corporation. In these two deeds the lands were conveyed by the same description as given in the deed from Shearer et al. to Huff et al., but no reference was made in either of them to the controversy or dispute about the lines.

On August 15, 1925, the Wood Mosaic Company of Kentucky executed and delivered to J. G. Huff and other grantors in the aforementioned conveyance to the Wood Mosaic Company of New York a quitclaim deed for two boundaries of land, one containing 102 acres more or less and the other containing 18 acres more or less. It was recited in this deed that mistake was made by inserting in the description of the lands conveyed to the Wood Mosaic Company of New York and by it conveyed to the Wood Mosaic Company of Kentucky the two tracts thereby reconveyed; that it was not intended by the parties at the time that these two tracts should be conveyed or should be included in the description. Prior to the execution of the quitclaim deed, Shearer and Ramsey had sued and recovered from Huff and his associates the $1,600 balance of the purchase price retained in the first conveyance hereinbefore mentioned, but it appears that at that time there had been no adjustment or settlement of the boundary lines.

On March 25, 1926, Noah Flowers, owner of the Ferguson tract, instituted an action against J. G. Huff and his associates, and in his petition alleged that he was the owner of a tract of land therein described, and that defendants were setting up claim to a strip of land included within his boundary. He asked that his title

thereto be quieted, and that defendants be required to release to him any and all claims thereto. Defendants caused Shearer and Ramsey to be served with written notice in which the petition was fully set out and in which it was stated that the real estate described in the petition was included within the boundary conveyed to defendants by Shearer and Ramsey.

It was adjudged that the title of plaintiff Flowers to the boundary of the Ferguson tract, as shown by the report of the commissioner and surveyor appointed by the court, be quieted, and the defendants be enjoined from setting up any claim to any portion thereof.

Thereafter, Huff and his associates instituted this action in the Wayne circuit court against Shearer and Ramsey, and in their petition set up and refer to the conveyance from defendants to them and also the action of Flowers v. Huff et al. and the judgment therein rendered, adjudging Flowers to be owner by superior and paramount title of about 100 acres of land conveyed by defendants to them. They alleged in defending the Flowers suit they had been required to pay attorney fees of $300 and further sums of $107 court costs adjudged against them; that by the judgment, they had been ousted from the possession of about 100 acres of land, and that the value thereof as agreed upon by the parties at the time the conveyance was made was $1,600, which sum had been paid by plaintiffs; that the covenant of warranty in the deed from defendants to them had been breached to the extent of title to the 100 acres in the boundary which Flowers was adjudged to own, and they asked judgment for the sum of $1,600 and the amount of the attorney fees and costs paid by them in the Flowers suit.

By answer, the defendants admitted the conveyance to plaintiffs, but denied that there was about 100 acres of land included in the boundary or any greater number than 50 acres which was claimed by Noah Flowers or any one else, and they denied all other material allegations of the petition. In a second paragraph, they set up the conveyance from Huff et al. to the Wood Mosaic Company of New York and from the latter to the Wood Mosaic Company of Kentucky, and affirmatively alleged that, at the time plaintiffs sold the three tracts of land to the Wood Mosaic Company of New York, they received a full, complete, and adequate consideration and

conveyed the whole of the three tracts; and that plaintiffs procured the Wood Mosaic Company of Kentucky to reconvey to them portions of the three tracts for the sole and only purpose of enabling them to maintain this action.

By reply, plaintiffs, in addition to a denial of the affirmative allegations of the answer, alleged that in making the sale to the Wood Mosaic Company of New York, they pointed out to its representative the land in controversy in this action, and it was understood that same was not included in the sale; and that they did not sell and the company did not purchase same or any part thereof, but that by mutual mistake of the parties, and by mistake of the draftsman of the deed, the lands in controversy and dispute were included in the description in the deed. It was further alleged that, before the mistake was discovered by the parties, the conveyance had been made to the Wood Mosaic Company of Kentucky, and thereafter, when it was discovered, the latter, in order to correct the same, reconveyed to plaintiffs the lands involved in this action.

Trial before a jury resulted in a verdict in favor of the plaintiffs for 38 acres at the rate of $14.33 per acre and for $150 attorney fees, pursuant to which the court entered judgment for the sum of $548.34, with interest from January 1, 1920, and also the sum of $150 of interest from October 18, 1930, and for the additional sum of $107 court costs paid by plaintiffs in the Flowers case. Defendants have appealed.

Some question is made by appellants as to the sufficiency of the evidence to sustain the jury's finding that the boundaries conveyed to appellees by appellants lapped or interfered with the boundaries of the Ferguson tract owned by Flowers. It appears in evidence that the land conveyed by appellants to appellees included a 400-acre and a 350-acre survey patented in the name of John, Lemuel, and Paul Stocton in 1848 as well as all or a portion of another patent in the name of the Stoctons and possibly other lands. The 400 and 350-acre surveys adjoin the Champ Ferguson 194-acre survey patented in 1855 which is owned by Noah Flowers. The line between Wayne and Clinton counties is the dividing line between the Stocton tracts and between the Stocton 400-acre survey and the Ferguson tract. In the suit of Flowers v. Huff et al. Mr. Bishop, a commissioner, was

appointed to survey and locate the Stocton 400 and 350-acre tracts, the Ferguson tract, and the line between Wayne county and Clinton county with reference to these tracts. The surveyor made an extensive report accompanied by a map showing the three tracts of land and the county line within the boundaries thereof. By this report it is shown that there is no conflict between the boundaries of these various tracts. This report was confirmed by the court, and the judgment, which was based on the report, fixed and determined the boundaries of the Noah Flowers tract as herein described and shown on plats. The entire record in the Flowers case was by agreement introduced in evidence in this case and made a part of the record. Mr. Gibson, the commissioner who made the survey and report in the Flowers case, testified from his report and surveys made in that case and as to surveys made by him after the institution of this action.

His evidence shows that the boundaries as given in the deed from appellants to appellees included approximately 90 acres of the Ferguson boundary, the lap at one point being a fraction over 74 acres and at another a fraction over 15 acres. In this, he was sustained by another surveyor. Surveyors who were introduced as witnesses by appellants admitted that there was some lap on the Flowers tract, but their evidence indicated that it was not nearly so great as that fixed by Mr. Gibson. The conflict in evidence, it appears, arises out of confusion as to the location of certain corners and as to the length of certain lines. There is ample evidence to support the jury's finding that the boundaries in the deed from appellants to appellees interfered with the Ferguson tract and as to the quantity of land included in the lap, and this court would not be authorized in disturbing the verdict because of a mere conflict in evidence and especially so when, as in this instance, the evidence of complaining parties does nothing more than raise a doubt. Nugent Sand Co. v. Howard, 227 Ky. 91, 11 S. W. (2d) 985; Louisville & N. Ry. Co. v. Carter, 226 Ky. 561, 10 S. W. (2d) 1064.

It is further argued by counsel for appellants that, since the land in controversy was included in the boundary in the deed from appellees to the Wood Mosaic Company of New York, they thereby divested themselves of title and estopped themselves from relying upon any mistake in the deed as against appellants who were not

parties thereto; and that appellees cannot maintain this action because they were not the owners of the land at the time of the alleged breach of warranty.

The evidence clearly established that, in the transaction between appellees and the Wood Mosaic Company of New York, appellees pointed out to the representatives of the company the boundary of the land in dispute, and it was agreed and understood that it was not included in the sale and was to be excluded from the description in the deed, but that, by mutual mistake upon the part of the parties and by mistake upon the part of the draftsman, it was included in the boundary as described in the deed. It was in like manner included in the deed from Wood Mosaic Company of New York to the Kentucky company. The same officers and agents represented each of these corporations and knew and understood that the land in dispute was not to be included in the conveyance. Neither company made claim of ownership to this land, and, upon discovery of the mistake in the deed, the Kentucky corporation voluntarily made the correction by quitclaim deed, thus doing what equity would have compelled it to do. "The parties agreeing can do for themselves all that equity could do for them." Reid v. Reid, 230 Ky. 835, 20 S. W. (2d) 1015, 1016. There had been no such intervening rights of purchasers, creditors, or other persons as would have prevented equity from reforming the deed so as to express the true intention of the parties. Clearly the right of action on the covenant of warranty was in appellees, and this conclusion renders it unnecessary to discuss other questions argued by counsel.

Judgment affirmed.