### PAGE v. HINCHEE.

No. 26265.   Nov. 12, 1935.

William J. Crowe and Twyford & Smith, for plaintiff in error.

C. J. Brown and Leo G. Mann, for defendant in error.

PER CURIAM. This action was instituted by G. W. Hinchee in the district court of Oklahoma county on July 7, 1932, against K. B. Clarendon, Alice Clarendon, Minnie Page, and Connelly Brothers, Inc., seeking a personal judgment against the Clarendons on two notes aggregating $3,750, made by the Clarendons to Hinchee on June 2, 1930, and foreclosure of a mortgage on certain real property in Oklahoma City, given to secure the payment of said notes, and also a personal judgment against Minnie Page for the amount of said notes on a mortgage assumption clause contained in a general warranty deed from the Clarendons to her, recorded October 2, 1930, and a personal judgment against Connelly Brothers, Inc., for the amount of said notes on a mortgage assumption clause contained in a general warranty deed made by Minnie Page to it December 19, 1930. Service of summons was had on Connelly Brothers July .10, 1932, and on Minnie Page September 16, 1932. The Clarendons were never personally served, but service on them was had by publication. Connelly Brothers, Inc., answered by general denial and Minnie Page filed a verified answer, subsequently amended, whereby she denied generally the allegations of the petition, and specifically the execution of the notes and mortgage sued on, and affirmatively pleaded that the assumption clause in the Clarendon deed to her was inserted by error, mistake, and inadvertence, and was without consideration and never accepted by her; that she did not assume or agree to pay the mortgage, and that after the discovery of the existence of said clause so inadvertently placed in said deed, the Clarendons made her a second general warranty deed on December 30, 1933, correcting said mistake and error, and nullifying said assumption clause. The plaintiff filed a reply denying the new matter in the answer of Minnie Page as amended, asserting in substance that the correction deed was not a deed for the reason that it shows on its face that the grantors therein had no title to convey and the said instrument was merely a self-serving ex parte document secured without notice to the plaintiff, for the purpose of presenting evidence without taking deposition and without giving plaintiff a chance to cross-examine witnesses, and also that Minnie Page was estopped from denying the validity of the assumption clause contained in the original deed to her, for the reason that the deed had been of record for more than three years, and that she had accepted the benefits thereof and transferred the title obtained thereunder, and because the plaintiff had accepted and acted upon said assumption clause, and had been put to the expense and trouble of making Page a party to the suit, and in obtaining service upon her, and asserting that the defendant Page had ratified the assumption clause by paying interest upon said mortgage indebtedness, which had been accepted by the plaintiff, and further asserting that the correction deed was champertous, being made during the pendency of the suit and at a time when the grantors had been out of possession for more than a year without collecting rent therefrom.

Plaintiff having died March 11, 1933, the cause was revived in the name of Hattie E. Hinchee as his personal representative on October 2, 1933. The administration case having been closed and Hattie E. Hinchee being plaintiff's sole heir, she was thereafter substituted as party plaintiff.

For convenience, the parties will be referred to as they appeared in the trial court, the plaintiff in error as defendant, and the defendant in error as plaintiff.

On the trial, the plaintiff introduced in evidence the notes and mortgage sued on, the defendant objecting as to the notes on the ground that their execution had not been proven. The plaintiff also introduced in evidence the recorded deed from the Clarendons to the defendant and the recorded deed from the defendant to Connelly Brothers, Inc., both of which deeds contained the following assumption clause:

"Subject to a mortgage in the sum of forty-five hundred ($4,500) dollars, which the grantee herein assumes and agrees to pay."

On this evidence the plaintiff rested the case and the defendant demurred to the evidence. The demurrer was overruled. The defendant Minnie Page testified in her own behalf. Her testimony is uncontradicted and undisputed. She said that she did not assume or agree to pay the Hinchee mortgage or any part thereof; that the assumption clause in the original Clarendon deed to her was inserted through inadvertence and mistake, and was not discovered by, or known to, her, until after she was served with summons; that she never read the deed until then, and that after the discovery of the mistake, she procured from the Clarendons a correction deed, which was put in evidence over the objection of the plaintiff, containing the following provision:

"The grantee herein does not assume, nor agree to pay, any encumbrance that may exist upon said property. This deed is a correction deed given to correct an erroneous and inadvertent statement occurring in a deed dated _____ day of October, 1930, and acknowledged the same day, between the same grantor and the same grantee, which deed was filed for record October 2, 1930, and recorded in book 406, page 144, in which deed it was incorrectly and inadvertently recited that the grantee assumed and agreed to pay a certain mortgage therein described and such was not the agreement nor contract between the grantor therein and the grantee therein, and the grantors hereby certify that said former deed of October, 1930, was executed, acknowledged and recorded by them without the consent or knowledge of the grantee. It is the purpose of this deed to retract and nullify said assumption clause appearing in said former deed on account of error and mistake, and for the further reason that there is no consideration for same."

She said that prior to October, 1930, Clarendon had borrowed money from her from time to time to meet his pay roll until he owed her about $4,000; that she tried unsuccessfully from time to time to collect from him until finally two or three weeks before October, 1930, he told her he was unable to get the money, but would sell her his equity in the property mortgaged to Hinchee, and it was agreed that she would buy his equity and allow him a credit on his indebtedness of $2,000; that about two weeks thereafter she met Clarendon and was informed by him that he had deeded her the property; that he had the deed at his home and would either bring it or send it to her, but did neither; that shortly thereafter he informed her that he had mislaid the deed and could not find it; that shortly thereafter Clarendon moved to New York without paying her or delivering the deed; that she wrote him in New York but did not hear from him for a long time, but about April 1, 1931, she received a letter from him saying that he had found the deed among his old papers and would send it to her, which he did; that when she received the deed from Clarendon she had already, on December 19, 1930, sold and conveyed the property to Connelly Brothers, Inc., and did not pay any attention to the deed, but, without reading it, stuck it down in her desk where it stayed until she was served with summons in this case, when she hunted it up and discovered for the first time that it contained the assumption clause; that she never at any time examined the record of said deed and had no information from any source that it contained the assumption clause until after she was served with summons; that she had never paid any interest on the indebtedness to Hinchee and had nothing to do with directing what should be put in the deed to Connelly Brothers, Inc., with reference to the assumption of the Hinchee mortgage; that her deed to Connelly Brothers, Inc., had already been prepared before she saw it and that she signed it when it was presented to her. She said, however, that she understood that Connelly Brothers, Inc., assumed and agreed to pay the Hinchee mortgage. The evidence further shows that Clarendon filed the deed for record on October 2, 1930, and after being recorded the deed was returned by mail to Clarendon's address in Oklahoma City.

The trial court rendered a personal judgment against Minnie Page and Connelly Brothers, Inc., for the sum of $4,681.25, with interest, and $375 attorney's fees and costs, and foreclosing the lien of said mortgage to secure the payment of said judgment. The court further adjudged that Connelly Brothers, Inc., was the principal debtor as between the parties defendant, and that in

the event the judgment, or any part thereof, was paid by Minnie Page, she should thereupon be subrogated to the rights of the plaintiff as against defendant Connelly Brothers, Inc., to the extent of such payment, and, further, that if the proceeds derived from the sale of the property were insufficient to satisfy the judgment, interest, attorney's fees and costs, execution should issue against Connelly Brothers, Inc., and Minnie Page for the remainder unpaid, such general execution to command the sheriff to levy upon and sell the property of Connelly Brothers, Inc., before levying upon the property of the defendant Minnie Page. No personal judgment was rendered against the Clarendons. Connelly Brothers, Inc., have not appealed but the defendant Minnie Page filed a timely motion for new trial, which was overruled by the court and an exception allowed. She now prosecutes this appeal from said judgment, by petition in error with case-made attached.

Under proper assignments of error, the defendant contends that the judgment of the trial court is not supported by sufficient evidence and is contrary to law.

It is well settled that where a purchaser buys land which is incumbered by a mortgage and assumes payment of such mortgage, the mortgagee has the right to enforce the assumption agreement against the purchaser, who becomes, as to the vendor, the principal debtor (Wynans v. Hare, 46 Okla. 741, 148 P. 1052; Scott v. Norris, 62 Okla. 292, 162 P. 1085) ; but the nature and extent of the right has been fruitful of much litigation resulting in a diversity of opinion among the courts throughout the country. One line of decisions holds that there is a direct liability on the part of the grantee to the mortgagee, which may be enforced by the mortgagee in an action at law. The other line holds that there is no direct liability, but that the assumption clause is inserted for the protection of the grantor and not for the benefit of the mortgagee, the grantee becoming the principal and the grantor his surety as between themselves, and that the right of the mortgagee against the grantee is an equitable right to reach and subject to the payment of the mortgage the additional or collateral security taken from the grantee by the grantor for the grantor's own protection, and must be asserted by a suit in equity. Federal courts uniformly adhere to the latter doctrine. Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667; Union Mutual Life Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437, 36 L. Ed. 118. In the latter case, the Supreme Court of the United States said:

"Few things have been the subject of more difference of opinion and conflict of decision than the nature and extent of the right of a mortgagee of real estate against a subsequent grantee, who by the terms of the conveyance to him agrees to assume and pay the mortgage.

"All agree that the grantee is liable to the grantor, and that, as between them, the grantee is the principal and the grantor is the surety, for the payment of the mortgage debt. The chief diversity of opinion has been upon the question whether the grantee does or does not assume any direct liability to the mortgagee.

"By the settled law of this court, the grantee is not directly liable to the mortgagee at law or in equity; and the only remedy of the mortgagee against the grantee is by bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt."

Oklahoma has been definitely committed to this theory. Beardsley v. Stephens, 134 Okla. 243, 273 P. 240.

In that case, this court said:

"We believe that the intention of an assumption clause in a deed is for the purpose of indemnifying the grantor, and that the only theory on which a mortgagee can sue a grantee who assumes the payment of a mortgage is that said assumption is for the purpose of granting additional security for the debt already existing."

And again:

"But this right comes from a rule in equity, that the mortgagee is entitled to the benefit of all the collateral securities which his debtor has taken for the mortgage debt."

It is true section 9409, Okla. Stats. 1931, provides that:

"A contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it."

But the plaintiff in this case does not come within the range of this statute, because there is no evidence, other than the mere presence in the deed of the assumption clause, that the assumption clause was inserted in the Clarendon deed expressly for the benefit of the plaintiff. Beardsley v. Stephens, 134 Okla. 243, 273 P. 240; Fry v. Ausman, 29 S. D. 30, 135 N. W. 708; Chung Kee v. Davidson, 73 Cal. 522, 15 P. 100.

This court said, in Beardsley v. Stephens, supra, that:

"Before a third party should be allowed to adopt an agreement entered into for his benefit, it is encumbent upon said third party to show that it was the intention on the part of the parties to the contract that the third party should be benefited thereby. The mere assumption clause in a deed having for its purpose the indemnity of the grantor will not be sufficient to show such an intention. But said third party seeking to take a benefit under said clause assumes the burden of showing that, at the time of entering into the contract, it was intended to be for the benefit of said third party."

This court held in Beardsley v. Stephens, supra, and in Sterrett v. Interstate Trust Co., 140 Okla. 125, 282 P. 290, that where the grantor is not personally liable for the mortgage debt, the mortgagee cannot enforce against the grantee an assumption clause in the grantor's deed to him unless it affirmatively appears from the evidence that the assumption clause in the deed was inserted expressly for the benefit of the mortgagee, within the meaning of section 9409, Okla. Stats. 1931.

It must be held, therefore, that the right asserted by the plaintiff in this case is an equitable one to avail himself of the security which the Clarendons took for their own protection, if the assumption clause in their deed to the defendant reflected the actual contract between them. The right is a derivative one, and the plaintiff's right cannot rise above, or be any greater than, the right of the Clarendons against the defendant, unless the defendant, by her conduct, has raised an estoppel against herself. Hare v. Murphy, 60 Neb. 135, 82 N. W. 312; Keller v. Ashford, 133 U. S. 610, 33 L. Ed. 667.

If the Clarendons could not enforce the assumption clause in their deed to the defendant, the plaintiff likewise could not, unless the defendant is estopped to dispute the validity of said clause.

The testimony of the defendant was objected to by the plaintiff on the ground that it varied the written terms of the Clarendon deed. This evidence was competent and the objection was not good. Cushing v. Newbern, 75 Okla. 258, 183 P. 409; Parlette v. Equitable Farm Mortgage Co., 165 Okla. 155, 25 P. (2d) 300; Lloyd v. Lowe, 63 Colo. 288, 165 P. 609, L. R. A. 1918A, 999; Peters v. Goodrich, 192 Iowa, 790, 185 N. W. 903; Andrew v. Naglestad (Iowa) 249 N. W. 131; Nebraska Wesleyan University v. Smith, 113 Neb. 208, 202 N. W.

625; Fishback v. J. C. Forkner Fig Gardens, Inc., (Cal. App.) 30 P. (2d) 586; Parker v. Interstate Trust & Banking Co., 56 Fed. (2d) 792.

The rule is well stated in the first syllabus of Peters v. Goodrich, supra, as follows:

"In action by mortgagee, a third party seeking to assert rights under an assumption clause in a deed, defendant is entitled to prove the real contract between himself and his grantor and to establish this by parol even though it varies or contradicts the recitals of the deed."

While the recital in the deed is evidence that the defendant did assume and agree to pay the mortgage, it is not conclusive. Nebraska Wesleyan University v. Smith, supra. Such recital in the deed is only prima facie evidence that the defendant assumed and agreed to pay the mortgage. Fishback v. J. C. Forkner Fig Gardens, Inc., supra. The defendant's testimony that she did not assume or agree to pay the mortgage, and that the clause was inserted by inadvertence or mistake and was not discovered by her until after she was served with process overturns and destroys the presumption arising from the presence of said clause in the deed, and the case is left without any evidence that she assumed or agreed to pay the mortgage. Neither of the Clarendons testified, nor did the notary who took the acknowledgment to the deed. There is no evidence in the record as to the value of the property conveyed, and the defendant's testimony that she merely bought Clarendon's equity for $2,000, which was paid by her giving Clarendon credit for $2,000 on a previously existing indebtedness from him to her, is uncontradicted.

The plaintiff is the original mortgagee and has not altered or changed his position to his detriment by reason of any reliance upon the assumption clause, or the conduct of the defendant. The assumption clause was inserted in the deed through inadvertence or mistake, and before the trial of the case the parties to the deed sought to correct the mistake by the correction deed. Under these circumstances, the defendant is not estopped to deny that she assumed or agreed to pay the mortgage or to assert that the assumption clause was inserted in the deed through mistake. Before the doctrine of estoppel will operate against her, it must be shown affirmatively that she accepted the deed with full knowledge that it contained the clause, or if she accepted it without such knowledge, that she ratified it thereafter with full knowl-

edge of its existence in the deed, and that by reason of her conduct, the plaintiff changed or altered his position to his detriment, in reliance upon said clause and the defendant's conduct. Lloyd v. Lowe, 63 Colo. 288, 165 P. 609; Colorado Fuel & Iron Co. v. Lenhart (Colo. App.) 41 P. 835; Johnson v. Maier, 194 Mo. App. 169, 187 S. W. 143; Texas Company v. Pettit, 107 Okla. 243, 220 P. 956, 231 P. 463; Oklahoma Aid Association v. Pecinosky, 167 Okla. 427, 30 P. (2d) 167; Fishback v. J. C. Forkner Fig Gardens, Inc., (Cal. App.) 30 P. (2d) 586; St. Louis-S. F. R. Co. v. Mann, 79 Okla. 160, 192 P. 231; Parker v. Interstate Trust & Banking Co., 56 Fed. (2d) 792; Church v. Combs (Mo.) 58 S. W. (2d) 467; Raffel v. Clark, 87 Conn. 567, 89 Atl. 184; Haskins v. Young, 89 Conn 66, 92 Atl. 877; Demaris v. Rodgers, 110 Minn. 49, 124 N. W. 457; Citizens Bank of Springfield v. Thomas, 214 Mo. App. 581, 264 S. W. 86; Bradshaw v. Provident Trust Co., 81 Ore. 55, 158 P. 274; Proctor Trust Co. v. Neihart, 130 Kan. 698, 288 P. 574; Bass v. Terry (N. Y.) 50 N. E. 953; Gifford v. Corrigan (N. Y.) 11 N. E. 498; Elliott v. Sackett, 108 U. S. 132, 27 L. Ed. 678; Drury v. Hayden, 111 U. S. 223, 28 L. Ed. 408.

Having come to the conclusion from a consideration of the evidence that the defendant never at any time agreed to assume or pay the Clarendon mortgage, and that the assumption clause was inserted in the Clarendon deed through inadvertence or mistake, and that the defendant is not estopped by her conduct from relying upon her defense, and that the right of no third party has intervened, we hold that it was competent for the Clarendons and the defendant to correct the mistake and eliminate the assumption clause by the correction deed of December 30, 1933. 18 Corpus Juris, page 217, par. 130; Church v. Combs (Mo.) 58 S. W. (2d) 467; Shearer v. Huff (Ky.) 49 S. W. (2d) 589; Cornbleth v. Allen (Cal. App.) 251 P. 87; Keller v. Ashford, 133 U. S. 610 33 L. Ed. 667

The general doctrine is laid down in 18 Corpus Juris, p. 217, par. 130, that:

"Where there is no fraud, the rights of a third party have not intervened and equity could have reformed the deed, it may be amended by subsequent instrument so as to effectuate the intention of the parties."

In Shearer v. Huff, supra, the Court of Appeals of Kentucky said:

"As respects correction by quitclaim deed, the parties agreeing can do for themselves all that equity could do for them."

The Supreme Court of United States held in Keller v. Ashford, supra, that the mortgagee has no greater right than the mortgagor has against the grantee, and, therefore, cannot object to the striking out by a court of equity, or to the release by the mortgagor, of such an agreement when inserted in the deed by mistake.

The defendant objected to the introduction in evidence of the two Clarendon notes, on the ground that their execution had not been proven. The plaintiff proved the execution of the mortgage and contended that under the authority of Aurelius Swanson Millwork Co. v. First National Bank, 107 Okla 203, 231 P. 471, the notes were competent without further proof of their execution. It becomes unnecessary for us to pass on this question, in view of our holding upon the other questions involved.

We have carefully examined the entire record, and have concluded that the judgment of the trial court, in so far as the defendant Minnie Page is concerned, is against the clear weight of the evidence and is contrary to law.

For the reasons herein stated, the judgment of the trial court, in so far as it affects the defendant Minnie Page is reversed, with directions to proceed in conformity with the views herein expressed.

The Supreme Court acknowledges the aid of Attorneys R. L. Davidson, Harry C. Fair, and E. M. Gallaher in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Davidson and approved by Mr. Fair and Mr. Gallaher, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.