STATE ex rel. COMMISSIONERS OF LAND OFFICE v. HALL et al.

No. 30302. Jan. 27, 1942.

Rehearing Denied April 21, 1942.
Application for Leave to File Second Petition for Rehearing Denied Sept. 15, 1942.

*128 P. 2d 838.*

Orlando F. Sweet, Dan Welch, and Everett H. Welborn, all of Oklahoma City, for plaintiff in error.

W. C. Austin and Robert B. Harbison, both of Altus, for defendant in error Horace C. Doughty.

DAVISON, J. Can a person who has acquired real estate, encumbered by a mortgage in favor of the Commissioners of the Land Office, by a deed in which he assumed and agreed to pay the mortgage indebtedness successfully plead the statute of limitations to defeat personal liability in an action to foreclose the mortgage by the State of Oklahoma ex rel. the Commissioners of the Land Office, in spite of the general immunity of the state from the operation of the statute when it acts in a sovereign capacity?

The trial court answered the foregoing question in the affirmative and accordingly sustained a demurrer of the grantee in the deed to the petition of the state and dismissed the action of the state insofar as the demurring defendant was concerned. The state presents the question on appeal, thus preserving the order of appearance in this court.

Our decision is that the question should have been answered in the negative. This conclusion requires a reversal of the cause.

Briefly stated, the essential facts which appear in the petition of the plaintiff are as follows:

On June 12, 1925, E. E. Hall and Nannie Hall mortgaged to the state on relation of the Commissioners of the Land Office 80 acres of land situated in Greer county, Okla., to secure a principal indebtedness of $2,500, evidenced by a promissory note of even date and due on June 15, 1930. The note and mortgage also provided for the payment of accruing interest and (in the event of foreclosure) attorneys' fees.

On November 25, 1925, the Halls sold and conveyed the land to Horace C. Doughty (the successful defendant in the trial court and the active appellee herein), who in the deed agreed to assume the mortgage indebtedness. On April 29, 1930, Doughty, joined by his wife, conveyed the land to one James C. Dickey, who also by a clause in the deed "agreed to assume" the mortgage indebtedness.

No payments have been made on the indebtedness secured by the mortgage since June 15, 1930, and the defendants have been in default since that date. The petition does not reflect who made prior payments of interest.

This action, to secure a personal judgment and foreclose the mortgage, was instituted on July 24, 1937, by the state on relation of the Commissioners of the Land Office against E. E. Hall and Nannie Hall, his wife, Horace C. Doughty, James C. Dickey, and others asserted to now claim an interest in the land. In the meantime accrued interest had accumulated causing the secured indebtedness to exceed $4,000.

As previously noted, the defendant Doughty successfully invoked the statute of limitations by demurrer.

In order to understand the basis of the holding of the trial court, it is necessary that we analyze the theory upon which the defendant Doughty is proceeding.

The statute of limitations applicable to indebtedness evidenced by a promissory note, secured by a real estate mortgage, is five years, and in this jurisdiction the bar of the statute against the debt operates to extinguish the lien securing the same. Section 10955, O. S. 1931, 42 Okla. St. Ann. § 21; Rice v. Burgess, 124 Okla. 177, 254 P. 746; Smith v. Bush, 173 Okla. 172, 44 P. 2d 921.

It is the general rule, however, that, unless the statutes provide to the con-

trary, or unless the state is necessarily included by the nature of the mischiefs to be remedied, statutes of limitation do not apply to states when suing in their sovereign capacity. In other words, states are granted immunity from the operation of the statutes. White v. State, 50 Okla. 97, 150 P. 716; White v. State, 50 Okla. 104, 150 P. 718; 34 Am. Jur. 307.

We have even extended the doctrine of sovereign immunity to actions by the Bank Commissioner in connection with the liquidation of insolvent banks (State v. McLaughlin, 159 Okla. 4, 12 P. 2d 1106; State v. Smith, 77 Okla. 277, 188 P. 96), although in doing so we have extended the doctrine beyond the limits recognized in most jurisdictions. Annotation 122 A.L.R. 947; 34 Am. Jur. 314.

Generally speaking, the doctrine applies where the state is acting in its sovereign capacity to protect or enforce a public right as distinguished from a private right. Herndon v. Board of Com'rs of Pontotoc County, 158 Okla. 14, 11 P. 2d 939; Board of County Com'rs of Oklahoma County v. Good Township of Harper County, 188 Okla. 151, 107 P. 2d 805. It is not, however, indispensable to invocation of the immunity that the action be instituted and maintained in the name of the state. Anderson v. Ritterbusch, 22 Okla. 761, 98 P. 1002.

The defendant Doughty concedes that insofar as the state seeks to enforce its claim against the Halls and foreclose its mortgage securing the same, it is acting in its sovereign capacity and enforcing a public as distinguished from a private right, and therefore entitled to immunity from the operation of the statutes of limitation to the extent indicated.

The importance of the basic concession and its connection with public interest has impelled us to carefully consider the matter, as we would not be disposed to proceed on a false premise. The concession is well taken. The state is performing a governmental function and engaged in a public enterprise when "loaning the school fund on real estate mortgages." Board of County Com'rs of Woods County et al. v. State ex rel. Com'rs of Land Office et al., 125 Okla. 287, 257 P. 778. Notice section 7 of the Enabling Act; art. 11, § 1, Okla. Const.; art. 6, § 32, Okla. Const. See, also, State Land Board v. Lee, 84 Ore. 431, 165 P. 372. It follows that when foreclosing a mortgage securing a loan made from school land funds it is seeking to enforce a public as distinguished from a private right.

The defendant Doughty also concedes in substance that by virtue of the assumption clause in the deed from the mortgagor, the mortgagee acquired a right of action against Doughty which it could have enforced in an action instituted within the period of time prescribed by the statute of limitations.

But the defendant points out that the right of the mortgagee to proceed directly against the grantee under the assumption clause is a derivative right to avail itself in equity of the security which the mortgagors took from their grantee for their own protection. He correctly asserts that under our decisions the assumption clause, standing alone, as it does in the case, is not regarded as a third party beneficiary contract creating a direct contractual obligation between the grantee and the mortgagee. McCoy v. Spears, 186 Okla. 33, 95 P. 2d 865; McBirney v. Bader, 181 Okla. 237, 73 P. 2d 156; Aetna Life Ins. Co. v. Short, 180 Okla. 240, 68 P. 2d 784; Page v. Hinchee, 174 Okla. 537, 51 P. 2d 487; Beardsley v. Stephens, 134 Okla. 243, 273 P. 240.

Upon the foregoing basis the defendant urges that since the right of the state was and is derivative, it acquired no greater right than did the mortgagor, and that the statute of limitations ran against the mortgagor, therefore it ran against the state. We will assume without deciding that the statute has run against the mortgagors in favor of the grantee.

No case precisely in point is called to our attention, although it is apparent

260

that the case was carefully briefed on both sides. Nor have we discovered such a case by our own independent research. Our decision must therefore rest upon applicable principles and appropriate analogy rather than strictly upon stare decisis.

Defendant's argument, though ingenious and persuasive, is not convincing for the reason that it overlooks certain controlling elements.

Regardless of the nature of the right which the state acquired against the defendant Doughty, that right was at the time of its acquisition capable of enforcement in an action by the state against Doughty for that purpose. It was a right acquired by the state in its sovereign capacity and its acquisition predated any statutory bar. If the statute is to operate as a bar, its operation must have occurred after the state became vested with the right, derivative though it may be.

Thus to say that the state loses its right against the grantee in this case is to say that the loss is justified although caused by the neglect of its officers. Such a holding would undermine the very foundation upon which immunity from the operation of the statute is based. As we said in White v. State, supra:

". . . The ground on which this doctrine rests is the great principle of public policy that the public interests shall not be prejudiced by the negligence of public officers, to whose care they are consigned."

And in Board of County Com'rs v. Good Township of Harper County, supra, we observed in connection with the immunity (with special application to a political subdivision but equally appropriate here):

"If this court is to continue to recognize a distinction between a public and private right of a political subdivision of the state with reference to the application of the statute of limitations thereto, *the distinction when drawn should be bolstered by every reasonable presumption favorable to government*

*immunity from the limitation. . . ."* (Emphasis ours.)

Careful scrutiny of the position of the defendant demonstrates that in determining the question of sovereign immunity he would have us attach *controlling importance to the source through which or from which the state acquires the right rather than the nature of the right and whether the failure of its enforcement affects public as distinguished from private enterprise.*

Defendant would also have us make specific application to this case of certain general language appearing in Page v. Hinchee, and other cases cited, supra, to the general effect that if the mortgagor cannot enforce the right against the grantee, neither can the mortgagee. The language alluded to had in the cited cases no specific application to situations such as is here presented, and the inappropriateness of its application here is apparent when we call to mind that the statute of limitations is leveled at the remedy and not the right (Clark v. Keith, 103 Okla. 20, 229 P. 613), and that sovereign immunity surrounds the state acting in a public capacity regardless of its inapplicability to the person from whom the right was derived.

The fatal weakness of the defendant's position in this respect is demonstrated by the decision of the Supreme Court of the United States in United States v. Nashville, Chattanooga & St. Louis Railway Company, 118 U. S. 120, 6 S. Ct. 1006, 30 L. Ed. 81. That case is sufficiently analogous to be of controlling importance on the phases of the present case under discussion.

In the cited case the government was seeking a belated enforcement of certain bonds which it had acquired by the investment of trust funds belonging to an Indian tribe. There, as here, the government was acting in a trust capacity. The court in holding that the statute of limitations did not apply said:

"It is settled beyond doubt or controversy—upon the foundation of the great principle of public policy, applicable to all governments alike, which

forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided—that the United States, asserting rights vested in it as a sovereign government, is not bound by any statute of limitations, unless Congress has clearly manifested its intention that it should be so bound."

The court also held that although the United States acquired the obligations subject to pre-existing equities and defenses, the statute of limitations nevertheless ceased to run upon its acquisition thereof. On this point it was said:

"The nature and legal effect of any contract, indeed, are not changed by its transfer to the United States. When the United States, through its lawfully authorized agents, becomes the owner of negotiable paper, it is obliged to give the same notice to charge an indorser as would be required of a private holder . . . It takes such paper subject to all of the equities existing against the person from whom it purchases at the time when it acquires its title; and cannot therefore maintain an action upon it, if at that time all right of action of that person was extinguished, or was barred by the statute of limitations. . . .

"*But if the bar of the statute is not complete when the United States becomes the owner and holder of the paper, it appears to us, notwithstanding the dictum of Cowen, J., in United States v. White, 2 Hill (N. Y.) 59, 61, impossible to hold that the statute could afterwards run against the United States. . . ."* (Emphasis ours.)

With reference to the public character in which the United States therein acted, it was stated:

". . . The securities were thus held by the United States for a public use in the highest sense, the performance of a quasi international obligation; and they continued to be so held until that obligation had been performed and discharged, after which they were held by the United States, like all other property of the government, for the ordinary public uses. . . ."

It is thus apparent that though the state is here seeking the enforcement of a derivative right acquired through an individual and in a sense steps into the shoes of that individual, it nevertheless acts in and retains its sovereign capacity to which immunity from the operation of the statute of limitations adheres, and its delay in seeking the enforcement of the right for the public benefit is thereafter excused.

It follows that the trial court committed error and that the cause must be reversed, with directions to proceed in a manner not inconsistent with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, and ARNOLD, JJ., concur. HURST, J., concurs in conclusion.

———

On Motion for Rehearing.

HURST, J. (specially concurring on rehearing). I concur in the conclusion, but am doubtful as to the reasoning of the majority opinion, which is based upon the assumption that the claim of Hall against Doughty is barred by the statute of limitations. It is my view that the petition does not show that the claim is barred, and that the right of Hall to get a money judgment accrues only when Hall shall have paid the debt or any part thereof. Under our decisions, as between Hall and Doughty, the latter became the principal debtor and Hall his surety. Beardsley v. Stephens, 134 Okla. 243, 273 P. 240; Page v. Hinchee, 174 Okla. 537, 51 P. 2d 487. The petition being silent as to whether Hall could have maintained an action against Doughty for indemnity by reason of the provisions of 12 O. S. 1941 § 1108, we must assume that the right of Hall to secure a money judgment (not to compel payment by an equitable proceeding as authorized in 15 O. S. 1941 § 380, and in 12 O. S. 1941 § 1107) against Doughty exists by reason of the provisions of 15 O. S. 1941 § 381, under which the cause of action for reimbursement accrues when and only when Hall shall have paid the mortgage debt or any part thereof. Miller v. National Surety Co., 159 Okla.

76, 14 P. 2d 228. Since it seems clear that the petition does not disclose on its face that Hall's claim against Doughty for reimbursement is barred, it follows that the petition does not disclose that the right of the Commissioners of the Land Office to a money judgment against Doughty is barred, and the demurrer to the petition should have been overruled.

I think there is a very serious question as to whether the right of the Commissioners of the Land Office to recover a money judgment against Doughty is superior to the right of Doughty, and if Hall's claim for reimbursement against Doughty should be barred by limitations or laches, or lost by reason of any other fact, the right of the state, which is derivative only, would probably likewise be barred or lost. See Page v. Hinchee, above; 41 C. J. 754; 19 R. C. L. 378; 37 Am. Jur. 335, § 1016; 21 A. L. R. at 488, annotation. I doubt if the state's right is greater than the right of any other mortgagee would be under like circumstances.